THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI SOUTHEASTERN DIVISION

TRAVIS W. DAVIS,                        )
                                        )
                    Petitioner,         )
                                        )
        vs.                             ) No. 1:21 CV 11 SNLJ
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Respondent.         )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28. U.S.C. § 2255 to
vacate, set aside or correct sentence by Travis Davis, a person in federal custody.
On October 9, 2019, Davis pled guilty to the offense of Possession of Marijuana
with Intent to Distribute (Count 1), Possession of a Firearm in Furtherance of a Drug
Trafficking Crime and Crime of Violence (Count II), Interference with Commerce
by Robbery (Count III), and Felon in Possession of a Firearm (Count V).  See
*United States v. Davis*  1:19CR50SNLJ.  On March 2, 2020, this Court sentenced
Davis to an aggregate term of 300 months imprisonment.

### FACTS

**The Indictment.**

On March 12, 2019, the Grand Jury returned a five-count Indictment against
Davis, charging him with: (1) Conspiracy to Possess Marijuana With the Intent to
Distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (2) Possession of a
Firearm in Furtherance of a Drug Trafficking Crime and Crime of Violence in violation

1

of 18 U.S.C. § 924(c)(1)(A)(i); (3) Interference With Commerce by Robbery in violation

of 18 U.S.C. § 1951; (4) Possession of a Short-Barreled Shotgun in violation of 26

U.S.C. §§ 5845(a), 5861(d) and 5871[1]; and (4) Felon in Possession of a Firearm in

violation of 18 U.S.C. § 922(g)(1). (Case Number 1:19 CR 50 SNLJ; DCD 1) ("Criminal

Case")

After Davis made his initial appearance, the Court appointed attorney Steven

Wilson to represent Davis. (Criminal Case; DCD 12) On March 22, 2019, attorney

Robert Elovitz filed his Entry of Appearance for Davis. (Criminal Case; DCD 26, 27)

Wilson withdrew as attorney for the defendant. (Criminal Case; DCD 31, 32)

**Pretrial Motions.**

On June 3, 2019, Davis' attorney filed a Motion to Suppress Evidence and a

Memorandum in Support, seeking to suppress certain evidence and statements made by

Davis. (Criminal Case; DCD 40, 41) On August 19, 2019, Davis and his attorney

appeared before United States Magistrate Judge Abbie Crites-Leoni and waived his

right to file pretrial motions. That waiver was accepted by the Court. (Criminal Case;

DCD 57)

**Plea.**

Davis and his attorney appeared before this Court, on October 9, 2019, for his

plea hearing. Davis entered a guilty plea to Counts 1, 2, 3 and 5 of his Superseding

Information.  Davis also signed a written plea agreement setting out the terms of his

---

[1] Count 4 was not included in a Superseding Information filed on October 9, 2019. The other four counts were set out in the Superseding Information and were identified by the same count numbers as present in the original Indictment. Davis' case was resolved by his plea to Counts 1, 2, 3 and 5, and the Government dismissed Count 4 of the Indictment.

guilty plea agreement with the Government.  (Criminal Case; DCD 67) Davis admitted

the following offense conduct, both by oral colloquy and by the written plea agreement:

> On November 6, 2018, Travis W. Davis knew that he had been convicted
> of the following crimes, each punishable by a term of imprisonment
> exceeding one year:
>
>> (1) On March 30, 2001, in the Circuit Court of St. Charles County, Missouri,
>> in Case Number CR100-2845F, for the felony of Possession of
>> Pseudoephedrine With the Intent to Manufacture Methamphetamine;
>>
>> (2) On August 4, 2004, in the Circuit Court of Lincoln County, Missouri,
>> in Case Number 04L6-CR00988-01, for the felony of Attempted
>> Manufacture of a Controlled Substance;
>>
>> (3) On August 2, 2010, in the Circuit Court of Pike County, Missouri,
>> in Case Number 09L6-CR01255-02, for the felony of Manufacture of a
>> Controlled Substance;
>>
>> (4) On January 18, 2011, in the Circuit Court of Lincoln County,
>> Missouri, in Case Number 10L6-CR01285-01, for the felony of
>> Attempt to Manufacture a Controlled Substance.

In November, 2018, Ashley Purdom was living with John C. Lovell in Ripley
County, Missouri. Purdom called Illinois resident Travis W. Davis on his phone
and asked Davis to come to Missouri to transport Purdom back to Illinois.
Purdom informed Davis that Lovell was in possession of approximately eight
pounds of marijuana and some firearms that were located in Lovell's gun safe and
that Davis could take the marijuana and firearms by robbery. Davis agreed to the
plan. Davis asked his associate James W. Judd to come along with Davis on the
trip to take the marijuana. Judd agreed to accompany Davis for this purpose.
Davis took a short-barreled shotgun to accost Lovell to take the marijuana and
firearms.

Davis and Judd drove to the Lovell/Purdom home in Ripley County, using Judd's
vehicle. They arrived late on the evening of November 6, 2108. Both men left
Judd's vehicle and began walking to the front door of the Lovell/Purdom home.
Davis was openly carrying a Mossberg, 12 gauge, short-barreled shotgun as he
walked to the front door. Davis attempted to open the front door, but it was
locked. Davis shot the door three times, damaging the locks so that he and Judd
could gain entry. Then Davis kicked the door open.

Purdom had seen Davis and Judd arrive for the purpose of taking her back to
Illinois and to take Lovell's firearms and marijuana. Purdom had walked to the
front door to unlock it and allow Davis and Judd to enter. However, when Davis

fired the shotgun, numerous pellets from the shotgun struck Purdom. She fell to the floor and began bleeding.

Davis and Judd entered the home and accosted Lovell with the shotgun. They secured Lovell with zip ties and threatened him with the shotgun in order to unlock Lovell's gun safe. Lovell gave Davis and Judd the code to unlock the gun safe. Davis and Judd unlocked the gun safe and took several pounds of marijuana and some firearms back to Judd's vehicle. Some of those firearms are described as follows:

> A Smith & Wesson, .22 caliber pistol, bearing serial number HHL3510; A Stevens, 12 gauge shotgun, bearing serial number 141474C;An H & K, .45 caliber pistol, bearing serial number 24-090814DE;

Those firearms were all manufactured in locations other than the State of Missouri and affected interstate commerce prior to their ownership and possession by Lovell in Missouri. All of the weapons are "firearms" as that term is defined by Title 18, United States Code, Section 921(a)(3)(A), in that all the firearms were designed to expel a projectile by the action of an explosive.

Davis and Judd helped the injured Purdom into their vehicle. That group left Ripley County and drove back to Collinsville, Illinois. On the trip, one of the group removed the cell phone battery for Purdom's cell phone. Lovell called law enforcement officers and reported the home invasion and the fact that Purdom had been taken by unknown persons. Officers investigated the crime as a robbery of Lovell and a forcible kidnapping of Purdom. The officers submitted an emergency request to Purdom's cell phone carrier to locate her cell phone in an attempt to locate her. The next day, on November 7, 2018, Purdom was in Davis' home in Collinsville, Illinois, trying to recover from her wounds. She re-installed her cell phone battery to check her messages.  When she activated her cell phone, it alerted her cell phone provider. That provider was able to determine the location of her cell phone in a specific address in Collinsville, Missouri.  That address was the residence of Travis W. Davis. The cell phone provider then notified law enforcement officers of the location of Purdom's cell phone.

Missouri officers contacted the Illinois State Police and informed them of their information concerning the disappearance of Purdom. The Missouri officers requested that the Illinois officers take steps to locate and assist the wounded Purdom. The Illinois officers went to the Davis residence in Collinsville, Illinois, entered it, and located Purdom. They took her to a local hospital for treatment of her wounds.  Davis' wife, Mary Davis, was present at the home, along with several other individuals. Mary Davis gave consent for the officers to search her home. The officers conducted that search, finding the firearms stolen from

4

Lovell's home as described above, and a Mossberg, 12 gauge, short-barreled shotgun, bearing serial number L473110. The shotgun was a short- barreled shotgun in that its barrel length was less than 18 inches in length, as set out in Title 26, United States Code, Section 5845(a)(1). This Mossberg shotgun was the firearm used by Davis and Judd in the Lovell robbery.

The location of the robbery of Lovell by Davis and Judd was in Ripley County, Missouri, in the Eastern District of Missouri in the Southeastern Division.

(Criminal Case; DCD 67; pp. 5-8; also DCD 98; Plea Hrg. Transcript.; pp. 16-21)

Davis' plea agreement was a "binding" plea agreement under Federal Rules of Criminal Procedure 11(c)(1)(C). (Criminal Case; DCD 67; pp. 1, 2) In that agreement, the parties agreed to jointly recommend a total sentence for all counts of 300 months' imprisonment. *Id*. The Court was not bound by this agreement, and, if the Court rejected the parties' recommendations, the Court would allow either party to withdraw from the agreement.

**The Presentence Investigation Report.**

A Presentence Investigation Report ("PSR") was prepared to assist the parties with Davis' sentencing hearing. That report recommended that Davis be sentenced as both an Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and as a career offender pursuant to U.S.S.G. § 4B1.1. (Criminal Case; DCD 86; pp. 9, 10) The PSR further recommended that Davis' sentencing range be set at 288 to 330 months since he was a career offender who had pled guilty to an offense charged under 18 U.S.C. § 924(c). (*Id.* at p. 11) As a career offender, Davis' Criminal History Category was set at VI, pursuant to U.S.S.G. §4B1.4(c). (*Id.* at p. 23) Because Davis was an Armed Career Criminal, he was subject to a mandatory minimum sentence of 15 years for his conviction for Count

V, Felon in Possession of a Firearm. (*Id.* at p. 30) The minimum term of imprisonment for Davis' conviction for Count 2, Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Crime of Violence is ten years and that sentence must be served consecutively to any other sentence. (*Id.*) The result of the two mandatory minimum sentences results in a mandatory minimum sentence of 300 months, with a top Guideline range of 330 months.  (*Id.*)

**Sentencing Hearing.**

On March 2, 2020, this Court conducted a sentencing hearing. This Court announced that it would accept the plea agreement and impose

the sentence recommended by the parties.  (Criminal Case; DCD 100; p. 5)  This Court imposed a sentence of 60 months for Count 1, 180 months for Counts 3 and 5, with those sentences to run concurrently, and a sentence of 120 months for Count 2, with that sentence to run consecutively to all other sentences, for a total sentence of 300 months. (*Id.*) Davis was also ordered to serve a period of supervised release of five years.  (*Id.*)

**The Appeal.**

Davis did not appeal either his conviction or sentence.

**Petition for Post-Conviction Relief Pursuant to § 2255.**

On January 21, 2021, Davis filed his Petition under 28 U.S.C. ' 2255, asking that this Court set aside his conviction and sentence.  (Case Number 1:21 CV 11 SNLJ; DCD 1) Davis attacks his conviction in three parts and multiple subparts – all related to the alleged ineffective assistance of counsel.

## APPLICABLE LAW

**A.**　　"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426–27 (1962)); *see also* R. Governing § 2255 Proceedings 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo- Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary

hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted); *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1998).

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's *performance* was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance *prejudiced* his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either [the performance or prejudice] prong is fatal to the claim."

*Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citation omitted). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that the motion would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

## DISCUSSION

**1.  Ineffective assistance of counsel – Indictment.**

    **(a)  Failed to object to an unconstitutional indictment.**

In the general allegation of error labeled "Ground One" in his Motion, Davis alleges that his attorney was ineffective because he failed to "object to an unconstitutional indictment." (Davis' Section 2255 Motion; DCD 1; p. 4) In his Memorandum Davis makes the complaint that "counsel failed to object to the unconstitutional charges and move to dismiss the indictment for failing to charge an offense and lack of sufficient elements to convict or place him on notice charges to mount a defense against." (Davis' Section 2255 Memorandum; DCD 1-1; p. 3) It appears these allegations are related to Davis' specific complaints made later in his Section 2255 Motion that his Hobbs Act Robbery charge was legally insufficient and that his marijuana conspiracy count improperly did not allege an amount of drugs in the indictment.  The Court will address those matters in the order that they were raised by Davis.

    **b)  Failure to file timely notice of appeal.**

In this ground, Davis makes the complaint that his attorney failed to file a Notice of Appeal, even though Davis requested that appeal. Specifically, Davis stated:

> Petitioner's counsel denied him a constitution right when he requested counsel to file a timely appeal on numerous grounds such as receiving a greater sentence that was expected and told by counsel such as 15 years not 25. That a maximum
> by statute only carried 10 years. That the indictment was defective in many areas in particular, it did not state the amount of marijuana allegedly stolen,

taken, or robbed. That the Court sentence him outside the statutory required sentence without an amount listed in the indictment., and counsel was asked several times he wanted him to appeal but Counsel refused to do so.

(See Davis' Section 2255 Memorandum; DCD 1-1; p. 3)

Eighth Circuit case law treats this type of claim made in a Section 2255 motion as a factual issue requiring evidentiary support to resolve. For example, in *Whitthar v. United States*, the district court was confronted with competing sworn statements from a section 2255 petitioner and her former counsel as to whether the petitioner wanted to pursue an appeal. 793 F.3d 920, 923 (8th Cir. 2015). The Eighth Circuit instructed that factual disputes in this context are sufficient to warrant a hearing, at least where "neither statement is facially incredible and both contain 'similar specificity' regarding . . . the alleged appeal-request conversation." *Id.*

The issue of whether Davis told his attorney to file a notice of appeal raises a factual issue that must be resolved by an evidentiary hearing, because a failure to file a criminal appeal when requested is automatically ineffective assistance of counsel, even if such an appeal would prove to be unsuccessful. *Id.* Therefore, this Court will set the matter for an evidentiary hearing and appoint Davis an attorney for that purpose.

c)  **Failure to object to a sentence in excess of statutory maximum.**

In his Section 2255 Motion, Davis made the statement claiming that his attorney mistakenly allowed him to be sentenced to 25 years imprisonment. Specifically, he claims that "counsel denied him a constitutional right when he requested counsel to file a timely appeal on numerous grounds *such as receiving a greater sentence that was expected and told by counsel such as 15 years not 25. That a maximum by statute only*

*carried 10 years."* (Davis' Section 2255 Memorandum; DCD 1-1; p. 3) (Emphasis furnished)

Davis' claim that he was surprised by receiving a sentence of 25 years is easily refuted by reference to the parties' binding plea agreement. That agreement specified that each party would recommend a sentence of imprisonment of 300 months. The sentence imposed was exactly what both parties expected it to be. That agreement stated:

> The parties recommend a 60 month sentence for Count I, a 180-month sentence for Count II to be imposed consecutively to the sentences for Counts I, III and V, for a total sentence of 300 months.
>
> . . .
>
> The parties further agree that neither party shall request a sentence above or below the sentencing agreement in this paragraph pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

(Criminal Case; DCD 67; p. 2)

This Court specifically asked Davis about his understanding of the entire written plea agreement:

| | |
|---|---|
| Court: | The lawyers have given me this written guilty plea agreement consisting of 15 pages. I see that you and the lawyers have signed it on page 15; is that right? |
| Davis: | That's correct. |
| Court: | Have you read the agreement? |
| Davis: | I have. |
| Court: | Have you gone over it in detail with your lawyer? |
| Davis: | Yes. |

12

| | |
|---|---|
| Court: | Has he explained the contents of the agreement in detail to you? |
| Davis: | He has. |
| Court: | And do you understand the contents of this agreement? |
| Davis: | Yes. |
| Court: | Is there anything in here that you do not understand? |
| Davis: | No. |
| Court: | Have any promises been made by anyone to get you to plead guilty other than the promises set out in this agreement? |
| Davis: | No. |
| Court: | So this is the complete, full total agreement; right? |
| Davis: | Yes. |

(Criminal Case; Plea Colloquy; DCD 98; pp. 10-11)

The Court also made sure that Davis understood the exact sentence

that was recommended both by him and the Government:

| | |
|---|---|
| Court: | All right. So I also see this is a binding plea agreement on the Court for a total term of imprisonment of 300 months on all counts of 25 years. That would come down to a 60-month sentence for Count I, 180-month sentence for each of Counts III and V and a sentence of 120 months on Count II, and the sentence for Count II is to be imposed consecutively to the sentences for Counts I, III, and V, again, for a total of 300 months or 25 years. Is that the deal you're entering into then? |
| Davis: | Yes, Your Honor. |

(Criminal Case; Plea Colloquy; DCD 98; p. 12)

In spite of Davis' current claim that he received a larger sentence than he expected,

the reality is that Davis knew full well, when he pled guilty, that his sentence of

13

imprisonment would be 300 months. There was no surprise. This Court merely imposed the agreed-upon sentence.

This Court did not have an option as to imposing a lesser sentence. Davis was sentenced as an Armed Career Criminal for Count V. That classification automatically resulted in a mandatory minimum of 15 years for that conviction alone. The sentence for Davis' conviction under Count II is a mandatory minimum term of imprisonment of 10 years, which must be imposed consecutively to all other sentences. The Court did not have any other option other than to impose a minimum sentence for Davis of 300 months, or 25 years. The Presentence Investigation Report completely discusses the statutory minimum punishments and the applicable Guideline range of punishment. Davis admitted that he had reviewed the Presentence Investigation Report. (Criminal Case; DCD 100; p. 2)  There was no surprise and no "unexpected" sentence. The sentence imposed was not in excess of the statutory maximum sentence, but was instead the minimum sentence that could be imposed. Davis' attorney was not ineffective for failing to object to the sentence that Davis agreed to and that was required by statute. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

The record refutes Davis' claim that he was surprised at the length of his sentence or that the sentence was somehow improperly imposed. This issue will be denied without an evidentiary hearing.

**d)**     **Failure to object to the Hobbs Act Robbery charge as the robbery of a drug dealer is a state crime, not a federal crime.**

14

Davis also claims that his attorney was ineffective for failing to object to his Hobbs Act Robbery charge (Count III) on the basis that "stealing marijuana from a dealer in a sovereign state, county and town, is not the type of commerce the framers [of the Constitution] had wanted to punish or imprison." (Davis' Section 2255 Memorandum; DCD 1-1; p. 4) Davis also states that he "was innocent of the Hobbs Act Robbery, by no means did he affect commerce". (Davis' Section 2255 Memorandum; DCD 1-1; p. 4)

Davis fails to understand the exact charge made against him or the law supporting that charge, which was as follows:

> Count III:
>
> On or about November 6, 2018, in Ripley County, in the Southeastern Division of the Eastern District of Missouri, TRAVIS W. DAVIS, the defendant herein, aided and abetted by James M. Judd, did unlawfully obstruct, delay and affect, commerce as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in 18 U.S.C. § 1951, in that the Defendant, TRAVIS W. DAVIS, aided and abetted by James M. Judd, did unlawfully take and obtain personal property consisting of marijuana and firearms from John C. Lovell against his will by means of actual and threatened force, violence, and fear of injury, immediate and future to John C. Lovell's person, that is, TRAVIS W. DAVIS, aided and abetted by James M. Judd, threatened John C. Lovell with a firearm and forcefully obtained by threat marijuana and firearms from John C. Lovell. All in violation of Title 18, United States Code, Sections 2 and 1951.

(Criminal Case; Superseding Information; DCD 64; p. 2)

The sole question raised here by Davis is whether a Hobbs Act Robbery charge can be applied to the robbery of a marijuana dealer. It can.

The Supreme Court answered this question in *Taylor v. United States*, 136

S.Ct. 2074 (2016). In that case, the defendant raised the exact same question as raised

here by Davis, whether the robbery of a marijuana dealer can be charged federally as

a Hobbs Act Robbery under 18 U.S.C. § 1951. The Supreme Court framed the

question as follows:

> The Hobbs Act makes it a crime for a person to affect commerce, or to attempt to
> do so, by robbery. 18 U.S.C. § 1951(a). The Act defines "commerce" broadly as
> interstate commerce "and all other commerce over which the United States has
> jurisdiction." § 1951(b)(3). This case requires us to decide what the Government
> must prove to satisfy the Hobbs Act's commerce element when a defendant
> commits a robbery that targets a marijuana dealer's drugs or drug proceeds.

*Id.* at 2077.

> The Supreme Court then answered the question just as clearly:

> The answer to this question is straightforward and dictated by our precedent. We
> held in *Gonzales v. Raich,* 545 U.S. 1 (2005), that the Commerce Clause gives
> Congress authority to regulate the national market for marijuana, including the
> authority to proscribe the purely intrastate production, possession, and sale of
> this controlled substance. Because Congress may regulate these intrastate
> activities based on their aggregate effect on interstate commerce, it follows that
> Congress may also regulate intrastate drug *theft*.

> And since the Hobbs Act criminalizes robberies and attempted robberies that
> affect any commerce "over which the United States has jurisdiction," §
> 1951(b)(3), the prosecution in a Hobbs Act robbery case satisfies the Act's
> commerce element if it shows that *2078 the defendant robbed or attempted to
> rob a drug dealer of drugs or drug proceeds. By targeting a drug dealer in this
> way, a robber necessarily affects or attempts to affect commerce over which the
> United States has jurisdiction.

*Id.* at 2077. The Court further clarified that "the Government need not show that the drugs

that a defendant stole or attempted to steal either traveled or were destined for transport

across state lines." *Id.* at 2081. " Rather, to satisfy the Act's commerce element, it is

enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for,

as a matter of law, the market for illegal drugs is 'commerce over which the United States

16

has jurisdiction.'" *Id.*

Clearly, the robbery of a marijuana dealer is subject to prosecution as a Hobbs Act robbery. Marijuana is an illegal substance to possess under federal law. By Supreme Court precedent, the robbery of a marijuana dealer is subject to prosecution under the Hobbs Act. Davis' lawyer was not ineffective for failing to make an objection that would have been unsuccessful. *Rodriguez*, 17 F.3d at 226. This issue will be dismissed without an evidentiary hearing as it can be fully resolved based on the record in this case.

**e)     Failure to require Government to produce evidence of Hobbs Act Robbery charge.**

Davis next claims that defense counsel "failed to object[to] the Government's lack of evidence in this case at bar and showed no proof to support a Hobbs Act Robbery or any supporting facts at all. (Davis' Section 2255 Memorandum; DCD 1-1; p. 4) Specifically, he argues that "The Government should not be able an innocent man to plead by merely stating verbally and without evidence that Petitioner affected commerce or other interstate activity, where something more was needed, and Petitioner had a Constitutional right to have proof met by the Government." (*Id.* at p. 5)

Of course, there was no formal evidence presented to this Court as Davis admitted all the facts that were needed for his conviction, both in his written Plea Agreement and during his plea colloquy. There was no place for Davis' attorney to object to the lack of formal evidence, as there was no trial. Davis admitted the facts of his offenses and admitted that he committed all the elements of his offenses. (Criminal Case; Plea Transcript; DCD 98; pp. 16-22) Davis admitted the following during his plea colloquy, just after the Government recited all the facts surrounding Davis' case:

| | |
|---|---|
| Court: | Have you heard the statements from the prosecutor? |
| Davis: | Yes, Your Honor. |
| Court: | Is everything he said true and correct? |
| Davis: | It is true, Your Honor. |
| Court: | Do you admit that you did all those acts he described? |
| Davis: | Unfortunately, yes. |
| Court: | There's no question about it, is there? |
| Davis: | Nope. |
| Court: right? | And you read all the facts that are laid out on pages 5, 6, 7 and 8; |
| | Everything is true and correct? |
| Davis: | Yes, Your Honor. |
| Court: | I'm going to go through the elements of the offenses with you specifically. That's set out on pages 3 and 4, Paragraph 3 on page 3. As to Count I do you admit that you possessed marijuana, that you knew it was marijuana and that you intended to distribute some or all of it to another person or persons? Do you admit that? |
| Davis: | Yes, Your Honor. |
| Court: | On Count II do you admit that you committed the crime of possession of marijuana with intent to distribute on Count I and interference and that you knowingly possessed a firearm in furtherance of that crime? |
| Davis: | Yes, Your Honor. |
| Court: | Count III you knowingly robbed John Lovell at his residence in Ripley County, the robbery involved approximately 8 pounds of marijuana that he possessed for resale to others, the marijuana was in the possession of Lovell and that your actions obstructed commerce in some way or degree? |

| | |
|---|---|
| Davis: | Yes, Your Honor. |
| Sorrell: | That is a Hobbs Act robbery, Judge. I know it seems odd, but there's a Supreme Court case that says that. |
| Court: | All right. Then on Count V do you admit that you've been convicted of a crime punishable by imprisonment for a term exceeding a year - - that's a felony, in other words - - and thereafter you knowingly possessed a firearm that was then transported sometime beforehand in interstate commerce and that you knew you'd been convicted of a felony at the time. Do you admit all that? |
| Davis: | Yes, Your Honor. |
| Court: | Are you pleading guilty then because you are guilty? |
| Davis: | I am pleading guilty because I'm guilty. |

(Criminal Case; Plea Colloquy; DCD 98; pp. 21-23)

Davis admitted all the facts of his case and that he committed all the elements needed to convict him of all his counts. There was no need to introduce evidence; Davis himself supplied the proof. Davis was entitled to either a trial or a plea, not both. His lawyer was not ineffective for failing to require the Government to introduce formal evidence to establish Davis' guilt beyond Davis' own admissions. This allegation will be denied without an evidentiary hearing because it can be resolved completely based on the underlying record in this case.

**f)     Failure to object to Government's requirement to prove an interstate nexus element of the Hobbs Act Robbery charge.**

Davis states this claim as follows:

> Petitioner states he requested counsel to challenge the indictment
> and the Hobbs Act Robbery as a whole and counsel refused claiming

> his only duty is to arrange plea deals and instead of challenging the
> meritorious claims he forced Mr. Davis into pleading to the charges
> knowing or should have known Petitioner was innocent of the
> Hobbs Act Robbery, by no means did he affect commerce. See
> supporting dialog *United States v. Taylor*, 136 S.Ct. 2074 195 L.Ed.
> 2d at 456 (2016). Lexis 3928.

(Davis' Section 2255 Memorandum; DCD 1-1; p. 4)

Strangely enough, Davis cites *Taylor* for the proposition that the Government was required to prove that Davis affected commerce in some way other than stealing marijuana. The *Taylor* Court's holding does not support Davis' claim; in fact, the holding in *Taylor* supports the Government's position that the stealing of a marijuana dealer's marijuana affects commerce in a sufficient way to allow that conduct to be charged as a Hobbs Act robbery as detailed in Section I.d. Davis may not have intended to affect commerce, but he did by stealing Lovell's marijuana.

Davis might have mistakenly relied on the dissent filed in the *Taylor* case, which would have supported Davis' position if it had been the majority's opinion. But it was not, and Davis' reliance on *Tayor* is misplaced. Davis' attorney was not ineffective for failing to raise an issue that would have been unsuccessful. This issue will be denied without an evidentiary hearing in that it may be resolved on the underlying record.

### g) Failure to object that Davis' robbery charge violated the Commerce Clause.

Davis also argues that his indictment for the Hobbs Act robbery was an improper use of federal jurisdiction by violating the Commerce Clause. He states his argument as follows:

> Counsel did not object to the Court's holding in Petitioner's case

> which creates a rebuttable presumption of serious constitutional
> problems and expanded on an already flawed commerce-power
> precedents without holding the Government responsible of
> convicting Petitioner of Hobbs Act, without proving that
> Petitioner's robbery in fact affected interstate commerce or any
> commerce. Hobbs Act should be held in accordance with
> Constitutional limits . . .
> In making a federal crime to commit a robbery that "affects
> Commerce," Section 1951(a) the Hobbs Act Robbery invokes the full
> reach of Congress' Commerce Powers. . . .
> Section 1951(b)(3). To define the Hobbs Act's reach, this Court should
> the true limitations of Congress' authority to punish robbery under the
> Commerce Powers see *Lopez*, 514 Supp. (1995) in an outright limitation
> to obtain a conviction for robbery only if it proves so beyond a
> reasonable doubt at trial or change of plea as evidence during
> sentencing.

(Davis' Section 2255 Memorandum; DCD 1-1; p. 5)

The Government believes that Davis' references to the Commerce Clause
limitation on the power of Congress and his apparent references to *United States v.
Lopez*, 514 U.S. 549, 551 (1995), are an attack on the validity of the Hobbs Act as an
invalid extension of the power of the federal government as against the restrictions
imposed by the Commerce Clause. But while the Supreme Court found that the statute
in question in *Lopez*, 18 U.S.C. § 922(q), had nothing to do with "commerce" or any
sort of economic enterprise, *see id.* at 561, Davis overlooks the fact *Lopez* predates the
Supreme Court's 2016 holding in *Taylor* by more than 20 years. Taylor made the same
argument as advanced here by Davis. Nevertheless, the Supreme Court still found that
the robbery of a marijuana dealer could properly be charged as a Hobbs Act violation
and that a charge of a Hobbs Act robbery was a valid exercise of Constitutional power.
Thus, this claim fails because Davis' exact argument was completely rejected in *Taylor*.

   **h)   Failure to allow plea admissions without evidence; a guilty plea requires evidence to support it.**

   Davis argues that the Government is somehow required to produce evidence at Davis guilty plea hearing in order for him to validly enter his guilty plea. He cites no statute, no law, no case or any authority at all for his position. His argument is stated as follows:

> The Government cited absolutely no evidence to the grand jury or this Court and presented nothing more than inuend[o] at Petitioner's change of plea or at sentencing while counsel gloats and stands idle not objecting or encouraging Petitioner Mr. Davis, not to accept the plea knowing or should have known that the Government lacked authority. Beyond this the said Government presented absolutely no evidence that
> Mr. Davis committed any crime against the United States, or that Mr. Davis committed any crime against the United States, or that Mr. Davis affected any channel of interstate commerce, or person or thing in interstate commerce or instrumentality nor did the Government proved nothing more than robbing a private individual drug ealer.

(Davis' Section 2255 Memorandum; DCD 1-1; p. 7)(Citations omitted)

   Davis has a fundamental misunderstanding of the effects of his admissions during his guilty plea. During that plea hearing, and in his written Plea Agreement, Davis admitted every element and every fact necessary for his conviction on all offenses charged in the Superseding

Information. With those admissions, the Government was not required to introduce further evidence. Davis' admissions established, beyond a reasonable doubt, his guilt as to the charges.

   Rule 11(b)(3) establishes the requirements for the acceptance of a guilty plea by the district court. That rule states: "(3) Determining the Factual Basis for a Plea. Before

entering judgment on a guilty plea, the court must determine that there is a factual basis

for the plea." In Davis' case, this Court listened to Davis' admissions as to his guilt,

found that those admissions were sufficient and then accepted his plea:

> Court:    Based on your sworn testimony, the Court finds that you are
> competent to enter the plea of guilty, that you're doing so freely,
> knowingly and voluntarily. Further, that you have admitted the
> essential elements of the crimes charged.  Therefore, I find you
> guilty as charged in Counts I, II, III and V.

(Criminal Case; Plea Colloquy; DCD 98; p. 23))

A guilty plea is supported by an adequate factual basis when the record contains

sufficient evidence at the time of the plea upon which a court may reasonably determine

that the defendant likely committed the offense. *United States v. Scharber*, 772 F.3d

1147, 1150 (8th Cir. 2014). Facts obtained from the prosecutor's summarization of the

plea agreement and the language of the plea agreement itself, a colloquy between the

defendant and the district court, and the stipulated facts before the district court, are

sufficient to find a factual basis for a guilty plea.  *Id.*

In this case, the record demonstrates that Davis provided sworn testimony

establishing his guilt during his plea colloquy and that his admissions in his written

plea agreement support this Court's finding that Davis was guilty of the offenses

charged. Those admissions are sufficient for this Court to find David guilty. Davis'

attorney was not ineffective for failing to object to the lack of formal evidence from

sources other than Davis' own sworn admissions presented at the plea hearing, when

such independent proof was not required. This point will be denied without an

evidentiary hearing.

2.      **Ineffective assistance of counsel – violation of Davis' Due Process Rights.**

     a)      **Failure to object to lack of evidence at plea as to the amount of marijuana present in this case.**

     b)      **Failure to object to defective indictment in that the marijuana count did not allege a quantity of marijuana.**

This Court will address each of Davis' two issues in this portion of its Response, since both are very similar.

Davis contends that his Indictment was defective in that it did not specify any particular amount of marijuana and his attorney was ineffective because he did not require proof of that amount from the Government. He states:

> Counsel was inadequate and incompetent for failing to challenge the defective indictment charging Petitioner with offenses that did not support the offenses and further lacked elements to inform and protect the Petitioner Mr. Davis, against Double Jeopardy, that as Count I, there was no supporting facts as to the quantity of the charge of Marijuana allegedly known to have possessed with intent to distribute .................................................................................. The Government <u>"must"</u> name in the indictment the type and quantity under Title <u>21 U.S.C. § 841(a)(1)(b)</u> its mandatory when it subjects the Petitioner to enhancements and is also elements that must be proved regardless of a plea (citations omitted) when the United States seeks to hold Petitioner responsible it must adhere to the determination of
> drug quantity.

(Davis' Section 2255 Memorandum; DCD 1-1; p. 8)

Davis believes that the Government was required to plead and to prove the quantity of marijuana involved in his offense. He is mistaken, both as to the law and the relevant statute.

Davis' violations of the controlled substance statute are set out in <u>21 U.S.C. § 841</u>. That statute sets out four different categories of drug crimes. As to marijuana

charges, as relevant here, the statute permits a charge of less than 50 kilograms of marijuana with intent to distribute that carries a punishment range of up to five years in prison. 21 U.S.C. § 841(b)(1)(D). Davis was charged with the fourth and final subsection of the statute for his marijuana violation, which has no mandatory minimum punishment but is limited to a maximum of five years or 60 months imprisonment.

The Court agrees that if the Government were seeking a mandatory minimum punishment provided for under Section 841(b)(1)(A) or (B), it would have to charge a minimum quantity in the indictment. But here, the Government was not required to allege a quantity of marijuana, since there was no mandatory minimum punishment that required any finding of a quantity of marijuana. Any quantity of marijuana held for distribution would qualify for this charge.

This Court confronted an identical challenge in *Alcorn v. United States*, No. 1:11CV00111 SNLJ, 2011 WL 6780100 (E.D. Mo. Dec. 27, 2011). In denying the petitioner's claim, this Court stated:

> The law in this Circuit, and all other Circuits, is clear; the indictment need not charge the amount of drugs involved unless that quantity of drugs exposes the defendant to a higher range of punishment.
>
> . . .
>
> In Alcorn's case, the amount of marijuana grown by him was not a element of the case because the drug quantity did not increase his sentence. Alcorn is simply mistaken when he asserts that a drug quantity must be pled and proven in a marijuana case. The only cases where a quantity of marijuana needs to be pled or proven is when the Government is seeking to impose a sentence with a higher minimum and maximum sentence; that is, for marijuana cases involving offense conduct of more than fifty kilograms. If the Government does not specify a drug quantity in a marijuana manufacturing case, the punishment must be pursuant to Title 21, U.S.C. § 841(b)(1)(D). This is exactly what happened in Alcorn's case.

25

*Id.* at p. 8. (citations omitted) (collecting cases). Likewise, the Eighth Circuit has made clear that district courts may find drug quantities for sentencing purposes, by a preponderance of the evidence, for sentencing purposes, so long as those quantities do not engage the mandatory minimum sentences required by § 841(b)(A) and (B). See *United States v. Hollingsworth*, 298 F.3d 700, 702 (8th Cir. 2002).

Davis' attorney was not ineffective for failing to make a meritless objection.

*Rodriguez*, 17 F.3d at 226. This point will be denied without an evidentiary hearing.

**c)     Failure to object to Davis pleading guilty to Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Crime of Violence without proving evidence or facts at the plea hearing and sentencing hearing in that the Government did not prove the existence of a drug conspiracy.**

Davis states this claim as follows:

> . . . Counsel not once objected to Count Two allowing Petitioner to move forward advancing his plea to an unconstitutional charge as the government failure to support its claims without any evidence at sentencing or any facts supporting an alleged drug trafficking conspiracy.
>
> . . .
>
> There was no proof of any conspiracy at all.

(Davis' Section 2255 Memorandum; DCD 1-1; p. 9)

Despite this argument, Davis' Indictment never charged him with being involved in a conspiracy. He was charged with possessing marijuana with the intent to distribute and that he was aided and abetted by James M. Judd. *See* Criminal Case; Superseding Information; DCD 64; p. 1) Because there was no need to prove any agreement between the co-defendants, counsel was not ineffective for not objected to the lack of proof of a drug conspiracy. This issue will be denied without an evidentiary hearing.

**d)**     **Failed to produce Jencks material.**

In this point, Davis complains that his "counsel refused to produce a complete . . . 'Jencks materials.'" (Davis' Section 2255 Memorandum; DCD 1-1; p. 9) Since there was no trial, there was no need for the Government to produce any Jencks materials. *See* 18 U.S.C. § 3500 ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a . . . prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). Moreover, by virtue of its "complete file" disclosure practice in this case, the Government represents that it turned over to Davis' attorney all materials that it had in its possession regarding the offenses committed by Davis. Davis' attorney was provided all the materials held by the Government from all police agencies and investigative personnel. Thus, while it was not required to do so, the Government produced all Jenks materials, and Davis fails to identify any such documents he did not receive.

Jencks materials can be useful to a defendant who stands trial and needs to cross-examine the Government's witnesses. Those materials can be a basis for a defendant's theory of his defense, but only at trial. Since there was no trial in Davis' case, there was no requirement for a specific Jencks materials disclosure and there was no constitutional or statutory violation committed by the Government in this case.  And Davis' attorney was not ineffective for failing to turn over to Davis any Jencks materials, because Davis did not want a trial.

This issue will be denied without an evidentiary hearing.

**e)** **Failed to adequately prepare all defenses, arguments or investigate Davis' requests to challenge the indictment and other matters.**

In this point, Davis asserts that his counsel "refused to adequately prepare all defenses, arguments or investigate upon request by Mr. Davis, to challenge the indictment and any other issues favorable to him." (Davis' Section 2255 Memorandum; DCD 1-1; p. 10) Davis continues by stating, "Counsel refused to make those challenges and proceed to trial. Instead, he left Mr. Davis in the dark about what he was doing to defend him." (Davis' Section 2255 Memorandum; DCD 1-1; p. 10) Since Davis has not specified any deficiencies in his counsel's representation, this Court assumes that this complaint is merely repeating the same specific complaints Davis made earlier in his petition. Those issues have been fully resolved without the need for an evidentiary hearing. This issue will be denied without a hearing.

Furthermore, at his plea hearing, Davis represented that he was fully satisfied with his attorney:

| | |
|---|---|
| Court: | Because this is a criminal case you're entitled to effective representation from a lawyer at each stage of the proceedings against you: Do you understand that? |
| Davis: | Yes, sir. |
| Court: | So with that in mind I'll ask you are you satisfied with the way your lawyer has handled your case? |
| Davis: | Yes, sir. |
| Court: | Has he investigated the case to your satisfaction? |
| Davis: | Yes, sir. |

28

| Court: | Has he done everything you've asked him to do? |
|--------|------------------------------------------------|
| Davis: | Yes, Your Honor. |
| Court: | No gripes or complaints whatsoever then? |
| Davis: | No. |

(Criminal Case; Plea Tr.; p. 8)

At his plea hearing, Davis was fully satisfied with his attorney and said so under oath to this Court. Davis admitted that his attorney had fully investigated the case and had done everything that Davis asked him to do. There was no failure of Davis' attorney in his representation of Davis. This issue will be denied without an evidentiary hearing.

f)      **Failure to challenge the background of the co-defendant or investigate impeaching material related to the character of the co-defendant.**

Davis next contends that "Counsel would not challenge the background or character of the co-defendant as well as to all impeaching evidence or matters favorable to Mr. Davis, before trial or accepting any plea offers, as well as to any discovery materials or defenses." (Davis' Section 2255 Memorandum; DCD 1-1; p. 10) Davis does not set out any specific information that his attorney should have but failed to uncover.

This Court assumes that Davis is complaining about the character of co-defendant Ashley Purdom, but without him specifying, he could be complaining about co-defendant James Judd. With either person, Davis' attorney had exactly the same impeaching material as did the Government. The Government turned over materials showing that

29

Purdom was a lifelong drug addict, that she was using methamphetamine at the time when she was apprehended by the police, that she had numerous felony and misdemeanor convictions and that she was involved in the same scheme to steal marijuana and firearms. In fact, Purdom and Davis knew each other for more than a decade as Purdom's father cooked methamphetamine with Davis when Purdom was a teenager. If anyone knew any impeaching information concerning Purdom, it would be Davis. Davis didn't need anyone to provide impeaching information about Purdom.

As for Judd, the Government gave the prior conviction history of Judd to Davis' attorney. The Government was not in possession of any other impeaching information concerning Judd, because Judd never interviewed with the Government. However, Judd was Davis' friend in Collinsville, Illinois, and Davis should have known about any possible impeaching information.

Davis does not set out any information that he has learned that his attorney should have known about. He merely speculates that his attorney could have found that information. The Government's case was never built on the supposition that all its witnesses were of sterling character. All the people involved in this crime were criminals, from Lovell selling marijuana, to Purdom, Davis and Judd planning to steal the marijuana and Lovell's firearms. All the participants were readily impeachable. But the other evidence was strong enough to cause Davis to plead guilty. That other evidence included, among other things, the fact that Lovell's firearms were found in Davis' home the next day in Collinsville and that a bandana with Davis' DNA was found in Lovell's front yard the night of the theft.  Those items show Davis' presence at the scene of the crime and would

30

have served to corroborate Purdom's testimony if she had been called to testify at trial. Davis knew this and agreed to plead guilty on the overall strength of the case. He could not have won at trial merely by impeaching the Government's witnesses. And he has not shown any specific impeaching material that would change his decision to plead guilty. He simply avers that such impeaching material would have been discoverable, without stating what that evidence would be.

Davis has the burden to allege facts that to support his allegation that his attorney was ineffective and he has completely failed to carry his burden of proof. *See Smith v. United States*, 635 F.2d 693, 697 (8th Cir. 1980) ("While we do not require complete specificity in a matter of this type, we do need sufficient allegations of fact which, if true, would justify relief. 'Merely stating unsupported conclusions will not suffice.'") Davis does not set out any fact which he believes his attorney could have found, but didn't that would help his defense. Without that allegation, this Court has no basis to consider his request.

This issue will be denied without an evidentiary hearing as it is not supported by facts that could justify relief to Davis.

g)      **Failure to interview witnesses for possible perjury.**

In this point, Davis claims that he "demanded his Counsel to interview witnesses for possible perjury . . ." (Davis' Section 2255 Memorandum; DCD 1-1; p. 10) Again, Davis does not set out any specific instances where any witness made a false statement that would incriminate Davis. In fact, Davis plea colloquy completely establishes his guilt beyond any doubt, without reference to any witness. Davis has not provided this Court

31

with any information that could be used to grant him any relief. He only supposes that such evidence exists. Without providing that evidence, this Court will deny Davis' issue without an evidentiary hearing.

> **h)** **Failure to obtain "all evidence that the Government planned or intended to use against him."**

In this claim, Davis infers that he was not provided the evidence against him that was in the Government's file. "Petitioner had an absolute right to all evidence that the government planned or intend to use against him." (Davis' Section 2255 Memorandum; DCD 1-1; p. 10) Davis' statement is incorrect. As a beginning proposition, the Government is not *required* to give Davis all evidence in its files.  Indeed, Rule 16 requires the Government to disclose a limited universe of information, including the defendant's statements, the defendant's criminal record, reports of examinations and tests, as well as identifying expert witnesses and permitting the inspection of physical exhibits. Rule 16, on the other hand, identifies various materials that *are not* discoverable by the defendant. These rules make clear that the defendant is not entitled to "all evidence that the Government" might use against him.

More importantly, even though the Government was not required to turn over witness statements and officer reports, the Government did turn a copy of its entire file to Defendant's counsel. Davis' attorney's discovery file looked exactly like the Government's prosecution file. No document or report was left out. Davis had complete disclosure of the evidence possessed by the Government. His complaint as to this issue is both legally incorrect and is not supported by the facts. Davis does not set out any report, any statement or any piece of evidence supposedly held by the Government that he did

not receive, mainly because there aren't any. This issue will be denied without an evidentiary hearing.

### i)   Failure to move for lesser included charges.

Davis asserts that his attorney was ineffective for his failure to move for a lesser included charge. (Davis' Section 2255 Memorandum; DCD 1-1; p. 11) Davis cites no law that would entitle him to any lesser included charge. He simply faced the charges that the evidence supported and that he confessed to in his plea colloquy. This issue will be denied without an evidentiary hearing.

## 3.   Ineffective assistance of counsel – Failure to investigate.

### a)   Failure to ensure that Davis understood the nature of the charges against him at the plea colloquy and at sentencing.

Davis next claims that this Court committed error under Federal Rule of Criminal Procedure 11 by failing to determine whether Davis understood the nature of the charges against him. (Davis' Section 2255 Memorandum; DCD 1-1; p. 11)

The record below refutes Davis' complaint, and even assuming that it did not, any purported error was harmless.

Davis signed a Waiver of Indictment form prior to proceeding to plead guilty, since he was prosecuted by Information. His waiver states: "I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me." (Criminal Case; DCD 63) Davis and his attorney signed the waiver form.

The written Plea Agreement signed by Davis also contains his representation that

he understood the nature of his charges: "The defendant has reviewed the Superseding Information and understands the charge made. Understanding those rights, the defendant wishes to waive his right to grand jury indictment for the charges made in the Superseding Information." (Criminal Case; DCD 67; p. 3) The agreement also discussed the titles of all charges, the elements of each charge, and a factual recitation concerning the factual nature of each charge. (Criminal Case; DCD 67; pp. 2-8) After the listing of each element of each charge, the Plea Agreement contained Davis' representation that there was a factual basis for the plea and that he fully understood the elements of each crime.

Davis told this Court that he understood the contents of the plea agreement. (Criminal Case; Plea Colloquy; DCD 98; p. 10) Davis acknowledged that there was nothing in the Plea Agreement that he did not understand. *Id.* Davis admitted that he had read the Plea Agreement and had reviewed it in detail with his attorney. *Id.*

This Court went over each charge with Davis and the range of punishment for that charge. (Criminal Case; Plea Colloquy; DCD 98; pp. 14-16) This Court also covered each element of each charge with Davis, and Davis admitted he committed all those elements. (Criminal Case; Plea Colloquy; DCD 98; pp. 21-22)

This Court also discussed with Davis the need for the Superseding Information, noting that it was required by the addition of an element to the charge for Felon in Possession of a Firearm. (Criminal Case; Plea Colloquy; DCD 98; pp. 1-7) The Court read each word of the Felon in Possession charge. (Criminal Case; Plea Colloquy; DCD 98; p. 6) Davis said that he understood the need for the amendment to that charge.

(Criminal Case; Plea Colloquy; DCD 98; p. 3) This Court did everything possible to make sure that Davis understood the nature of each charge and the facts arrayed against him to support that charge.

Davis' attorney was not ineffective for failing to require the Court to engage in a different plea colloquy. The transcript of the plea makes clear that Davis understood the charges and consequences of each plea. His attorney committed no error and was not ineffective.

By the end of the plea colloquy, there was no chance that Davis did not fully understand what he was charged with. He understood the nature of the charges, the elements, the facts that supported each charge and that he was pleading guilty to each separate charge. Furthermore, Davis does not claim that he actually did not understand his charges. He only complains that this Court was somehow deficient in explaining those charges to him and that his attorney was ineffective. By not claiming that a Rule 11 deficiency somehow affected his substantial rights, Davis is not entitled to relief on this issue. Davis has made no claim that his substantial rights were violated. Substantial rights are defined below.

At one time, a district court's failure to comply exactly with Rule 11 could lead to a defendant's guilty plea being set aside. *See McCarthy v. United States*, <u>394 U.S. 459</u> (1969). That changed after the introduction of Rule 11(h), which provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights."

Since the addition of this provision, courts consistently have found that even

established violations of Rule 11 do not automatically entitle a petitioner to relief on

collateral attack. *Harvey v. United States*, 850 F.3d 388, 394-95 (8th Cir. 1988)

Violations which are "formal violations" fail in this respect. *Id.* (citation omitted). In

*United States v. Timmreck,* the Supreme Court recognized that a formal violation of

Rule 11 is cognizable on collateral attack only if it creates: (1) an error which is

jurisdictional or constitutional; (2) a defect which results in a "miscarriage of justice;"

(3) an omission inconsistent with the "rudimentary demands of fair procedure;" or (4)

"extraordinary circumstances where the need for the remedy afforded the writ of habeas

corpus is apparent." 441 U.S. 780, 783 (1979) (citations omitted). An error in following

the strictures of Rule 11 affects substantial rights only where the defendant shows a

reasonable probability that but for the error, he would not have entered a guilty plea.

*United States v. Dominguez Benitez,* 542 U.S. 74, 82 (2004).

The defendants in *Harvey* made the same claim as is now pressed by Davis, that

the district court did not read the charges to them. 850 F.3d at 395. That claim was not

sufficient to justify relief under the harmless error standard of Rule 11(h). Likewise, in

*United States v. Todd*, the defendant complained of a Rule 11 error due to the district

court not advising him of the maximum punishment. 521 F.3d 891 (8th Cir. 2008). The

Eighth Circuit agreed that there was error but concluded that such error was harmless

because the defendant failed to show that, but for the error, he would not have pled

guilty. The appellate court examined the record and the fact that the defendant did not

make any objection to the Presentence Investigation Report that would have disclosed all

possible charges and ranges of punishment. *Id.* at 896.

36

Davis suffers from the same disability, in that he was presented with the Presentence Investigation Report but did not object to any charge, punishment, calculation or any other matter regarding his case. His plea colloquy demonstrated that he understood the charges and the consequences of pleading guilty. Thus, the Government contends that no Rule 11 error occurred. Moreover, Davis has not shown that he would not have pled guilty but for any alleged Rule 11 error, so even assuming some defect, he is not entitled to any relief. This issue will be denied without an evidentiary hearing.

**b)     Failure by counsel to explain the Government's obligation to prove each element of each charge.**

In this point, Davis alleges that his attorney was ineffective for failing to advise him that the Government had an obligation to prove each element of each charge. ("And matter factly he had a right to challenge the information and indictment regarding the Government's requirement to prove each required element with the supportive evidence and if counsel would have explained clearly these protected rights he would have elected not to plead guilty and insist on going to trial instead.") ((Davis' Section 2255 Memorandum; DCD 1-1; p. 11)

Regardless of whether Davis' attorney went over each element of each charge or not, it is clear that this Court did. The Plea Colloquy contains this Court's explanation of each count and its elements, followed by Davis' admission that he committed each and every element. (Criminal Case; Plea Colloquy; DCD 98; pp. 21-22) Davis admitted that his attorney went over the written Plea Agreement, *in detail*, during his plea. (Criminal

37

Case; Plea Colloquy; DCD 98; p. 10) The elements for each charge were set out in the written plea agreement reviewed by Davis. Davis admitted that he had a GED, that he could read and write and that he had read the entire plea agreement. (Criminal Case; Plea Colloquy; DCD 98; pp. 7-10) Davis cannot make a colorable claim that he did not understand the elements of each charge as he admitted each element during his guilty plea. Davis knew the elements of each charge before admitted guilt. There is no violation of any right here and no ineffective assistance of counsel. This issue will be denied without an evidentiary hearing.

> **c)** **Failure to object to the Court not reading aloud the entire indictment and to explain each element.**

Davis alleges that "Failure of the Court to read aloud the indictment in open court and explain each element to the Petitioner constituted a violation of Rule 11(c)(1). *See Harvey v. United States*, <u>850 F.2d 388</u> (8th Cir. 1988)."

As noted above in the plea colloquy, this Court did explain each element of each charge. And the Court read aloud the amended charge in the Superseding Information, Count V, the Felon in Possession of a Firearm charge. (Criminal Case; Plea Colloquy; DCD 98; p. 6) It appears that Davis is complaining that the Court did not real aloud the remaining counts. There is no requirement for the Court to read those charges out loud at a change-of-plea hearing.

Davis contends that the failure of this Court to read aloud the entire Superseding Information is a violation of Rule 11. (Davis' Section 2255 Memorandum; DCD 1-1; p. 11) Rule 11 contains no such requirement. Moreover,

like Davis's previous claim, he fails to identify any harm that resulted from this

purported error, which separately precludes relief. Davis' lawyer was not ineffective for

failing to make an objection that would have been unsuccessful. *Rodriguez*, 17 F.3d at

226. Thus, this claim will be denied without an evidentiary hearing as it is an incorrect

statement of the law.


> **d)**      **Failure to direct Court to ask Davis if Davis understood the intent element of the marijuana charge.**

In his Memorandum, Davis claims that the Rule 11 plea colloquy was defective in

that the Court failed to determine Davis' intent to distribute marijuana. (Davis' Section 2255

Memorandum; DCD 1-1; p. 12) In making this claim, Davis imposes a hyper-technical

requirement on the Court that is not supported by any authority. In fact, Davis sets out no

legal basis for his claim, other than a general allegation that the Court violated Rule 11.


The plea record fully establishes that Davis admitted he intended to distribute the

marijuana that he stole from Lovell. The Court conducted the following colloquy concerning

Davis' intent to distribute the marijuana:

> Court:          I'm going to go through the elements of the offenses with you
> specifically. That's set out on pages 3 and 4, Paragraph 3 on
> page
> 3. As to Count I do you admit that you possessed marijuana, that
> you knew it was marijuana and that you intended to distribute
> some or all of it to another person or persons? Do you admit that?
>
> Davis:          Yes, Your Honor. (Criminal

Case; Plea Colloquy; DCD 98; p. 21)


Davis' admissions to those same elements was contained in his Plea Agreement,

which Davis signed and acknowledged was true. This admission completely refutes Davis'

argument that the Court ignored the intent requirement for the marijuana charge. Davis

specifically admitted that he intended to distribute the marijuana he possessed. Davis'

lawyer was not ineffective for failing to make an objection that would have been

unsuccessful. *Rodriguez*, 17 F.3d at 226.  This point will be denied without an evidentiary

hearing.

       **e)**      **Davis' guilty plea was neither knowing nor voluntary.**

Davis claims that this Court's purported Rule 11 violations resulted in a guilty plea

that was neither knowing nor voluntary. His claim was stated as "Petitioner's Plea was

unknowing in direct violation of Rule 11(b)(1)(G), where the court did not question

Petitioner to determine if Mr. Davis actually understood the intent element of the drug

charge." (Davis' Section 2255 Memorandum; DCD 1-1; p. 12) There is no requirement in

Rule 11 that requires the Court to delve deeply into Davis' subjective understanding of the

word "intent."  The meaning of the word intent is clear when used in the phrase "intended to

distribute some or all of it to another person or persons." This Court complied with Rule 11,

and there is no doubt that Davis understood the meaning of those words, and the "nature of

each charge."

     A guilty plea constitutes a waiver of constitutional rights and must be both knowing

and voluntary. *Gray v. United States*, 833 F.3d 919, 923 (8th Cir. 2016) (citation omitted).

"The standard was and remains whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant." *North Carolina v.*

*Alford*, 400 U.S. 25, 31 (1970). Federal Rule of Criminal Procedure 11(b)(2) echoes this

requirement. An involuntary and unknowing guilty plea is a nonstructural error, *see* Fed. R. Crim. P. 11(h), and "relief for error is tied in some way to [the error's] prejudicial effect." *See United States v. Dominguez Benitez*, 542 U.S. 74, 81, (2004). On harmless-error review, "the government has the burden of proving the defendant's knowledge and comprehension of the omitted information would not have been likely to affect his willingness to plead guilty." *United States v. Gray*, 581 F.3d 749, 752 (8th Cir. 2009); *see also United States v. Herndon*, 7 F.3d 55, 58 (5th Cir. 1993) (holding that where a defendant has been incorrectly informed of a mandatory minimum, the relevant "question is whether awareness of a mandatory minimum would have affected the defendant's decision to plead guilty").

The plea colloquy demonstrates that Davis was aware of the nature of his charges, the ranges of punishment, the consequences of pleading guilty and waiving his right to a trial, an that he was aware of all the rights attendant to his defense. (Criminal Case; Plea Colloquy; DCD 98) In his plea agreement, Davis requested a sentence of 300 months, which is what the Court imposed. He got exactly what he asked for. Davis' claim that he was not fully informed of his alternatives is simply not credible when he requested a specific sentence, particularly when he received the statutory minimum sentence.  And even if there was a technical violation of Rule 11, Davis has not shown that his substantial rights were violated or that he would not have pled guilty, but for the technical violation. Under Rule 11(h), Davis' claim fails under harmless error review. This claim will be denied without an evidentiary hearing.

      **f)**    **Court lacked subject matter jurisdiction.**

In his Memorandum, Davis makes a vague claim that this Court lacked subject matter

jurisdiction. (Davis' Section 2255 Memorandum; DCD 1-1; p. 15) It appears that Davis is laboring under an incorrect belief as to the meaning of "subject matter jurisdiction," as this Court certainly has jurisdiction to determine guilt and sentences in federal criminal cases. This  Court acquires subject matter jurisdiction in all cases involving violations of federal statutes. *See* 18 U.S.C. § 3231. ("The district courts of the United States shall have original jurisdiction, exclusive of the Courts of the states, of all offenses against the laws of the United States.") There is no question that this Court had subject matter jurisdiction over the federal charges made against Davis, which were all violations of federal statutes. This issue will be denied without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, this Court denies Davis' § 2255 petition without an evidentiary hearing, except for his contentions that he instructed his attorney to file a notice of appeal.  On that lone issue, counsel will be appointed and a hearing set forth.

This Court also denies Davis a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED this 5th day of August, 2021

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE